**WARNER BROS., INC., Film Export A.G., and DC Comics, Inc., Plaintiffs,**

v.

**AMERICAN BROADCASTING COMPANIES, INC., Defendant.**

**AMERICAN BROADCASTING COMPANIES, INC., Defendant and Third-Party Plaintiff,**

v.

**STEPHEN J. CANNELL PRODUCTIONS, INC., Third-Party Defendant.**

**No. 81 Civ. 1551 (CBM).**

United States District Court, S. D. New York.

March 18, 1981.

Weiss, Dawid, Fross, Zelnick & Lehrman by Allan Zelnick, New York City, for plaintiffs.

Hawkins, Delafield & Wood by Philip R. Forlenza, New York City, for defendant and third-party plaintiff.

Townley & Updike by Richard J. Barnes and Neil J. Rosini, New York City, for third-party defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, District Judge.

Plaintiffs, Warner Bros., Inc., Film Export A.G. and DC Comics, Inc., the owners of all rights in the cartoon character Superman and all works embodying him, brought this action against American Broadcasting Companies, Inc. (ABC) for copyright infringement under 17 U.S.C. §§ 101 *et seq.*, for false designation under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for unfair competition under § 368–d of the New York General Business Law. Stephen V. Cannell Productions was brought into

the action as a third party defendant. Plaintiffs moved two days ago, March 16, 1981, for a temporary restraining order and preliminary injunction enjoining the defendant: 1) from continuing to broadcast certain promotional television spots relating to its forthcoming made-for-television motion picture "The Greatest American Hero;" 2) from broadcasting the motion picture now scheduled for nationwide broadcast on the evening of Wednesday, March 18, 1981; and 3) from broadcasting any episodes of a television series based on "The Greatest American Hero" prior to affording plaintiffs opportunity to examine the shows and to seek appropriate relief. The court held a hearing on plaintiffs' motion on March 16 and 17 which included viewing a portion of a Superman television show, the entire movie entitled "Superman, The Movie", television spots which ABC has aired to promote "The Greatest American Hero," and "The Greatest American Hero." The court also heard testimony of witnesses and received exhibits and affidavits from both parties. For the reasons discussed below, the court denies plaintiffs' motion for a preliminary injunction.

FACTS

Plaintiff Warner Bros., Inc. is the exclusive United States distributor of the motion picture "Superman, The Movie" and of the forthcoming sequel "Superman II," all rights in which are owned by plaintiff Film Export A.G. Plaintiff DC Comics, Inc. is the owner of all rights in the cartoon character Superman and in works depicting that character and his adventures. The motion pictures "Superman, The Movie" and "Superman II" were made by the plaintiff Film Export A.G. under license from DC Comics, Inc. Pursuant to that license, Film Export also has the right to veto any new Superman television programs or series while its films are in release.

Defendant, ABC, is a national television network with affiliated stations throughout the United States. Steven V. Cannell Productions, the Third Party Defendant, is a producer of television programs with an exclusive contract with ABC. Steven V. Cannell wrote and produced the made-for-television movie "The Greatest American Hero" for broadcast by ABC on March 18, 1981.

In the forty years since his creation by the predecessors of DC Comics, Superman has become a "folk hero" to the American public, both in cartoon form and portrayed by live actors. There is no need for this court to give a detailed description of this caped, flying character with superhuman powers, who when not fighting for "truth, justice and the American way," masquerades as the "mild mannered reporter," Clark Kent. Superman's ability to fly "faster than a speeding bullet" and "leap tall buildings in a single bound" is well known to all Americans.

"The Greatest American Hero" is a new made-for-television movie that, if successful, will be the first show in a series in ABC's fall programming schedule. Excerpts from this premiere program and other film clips have been telecast by ABC for promotional purposes during the last two weeks. The leading character of "The Greatest American Hero" is Ralph Hinkley. He is an urban California high school teacher plagued both personally and professionally with the problems now indigenous to the average American John Doe of the 1980's. While walking through a semi-desert area at night to find gasoline for his suddenly stalled school bus, he is inexplicably chosen by unidentified aliens from a spaceship to receive a leotard type red suit and black cape which, when worn, endow him with superhuman powers. Unfortunately, Hinkley loses the instructions on how to use these powers and he bungles nearly every attempt to exercise his new abilities. The plot of the program follows Hinkley's mission, accompanied by an FBI agent and his girl friend, to stop a villain from taking over the city of Los Angeles.

DISCUSSION

The standard for granting a preliminary injunction is well-settled in this Circuit. The party seeking this relief must show both irreparable injury and either 1) a likelihood of success on the merits or 2)

sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Upon the showing of a prima facie case of copyright infringement, a copyright holder is entitled to a preliminary injunction without a detailed showing of irreparable harm. *American Metropolitan Enterprises of New York, Inc. v. Warner Bros. Records, Inc.*, 389 F.2d 903, 905 (2d Cir. 1968). This court need not consider whether plaintiffs will suffer irreparable injury, however, since it finds that plaintiffs have failed to meet their burden of showing likelihood of success on the merits or a balance of hardships tipping decidedly in their favor.

#### 1. The Merits

#### a) Copyright Infringement

Plaintiffs claim that "The Greatest American Hero" infringes their copyright in the Superman character by appropriating precisely those attributes that are unique to Superman. Plaintiffs point to Superman's unique take-off preliminary to flying, his singular flying technique, his powers of "X-ray vision", long distance hearing, superhuman strength and ability to resist bullets which Ralph Hinkley acquires when he dons the magic suit, as well as certain action details such as the manner in which Hinkley transforms himself from human to superhuman by putting on the suit.

In addition, plaintiffs say their copyrights are infringed by certain references made to well-known phrases found in the Superman adventures, such as: "It's a bird, it's a plane" and "faster than a speeding bullet, more powerful than a locomotive."

In order to prevail on its claim for copyright infringement a plaintiff must prove 1) ownership of the copyrighted work; 2) access thereto by defendants; and 3) a substantial similarity to the copyrighted work. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 911 (2d Cir. 1980). The only dispute between the parties in this case

is whether "The Greatest American Hero" bears a substantial similarity to the Superman character and story.

The Second Circuit's formulations of the test for determining substantial similarity were set forth in *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092–93 (2d Cir. 1977) and recently quoted in *Durham Industries, Inc. v. Tomy Corp., supra*, 630 F.2d at 911–912:

> "'Substantial similarity' is to be determined by the 'ordinary observer' test. Judge Learned Hand in defining this test stated there is substantial similarity where 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.' *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). More recently this court formulated the test as 'whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.' *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir. 1966)."

After comparing Ralph Hinkley and Superman, the court concludes that plaintiffs have not satisfied this test.

Plaintiffs' copyrights do not entitle them to protection of the *idea* of a character with superhuman powers who battles the forces of evil. "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself." *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). The Court of Appeals recognized in the early days of the Superman comic strip that the owners of Superman were "not entitled to a monopoly of the mere character of a 'Superman' who is a blessing to mankind." *Detective Comics, Inc. v. Bruns Publications, Inc.*, 111 F.2d 432, 434 (2d Cir. 1940). Plaintiffs may not claim a protected interest in the theme of a man dressed in cape and tights who has the power to fly, resist bullets, crash through walls and break handcuffs with his bare

hands. Rather, to warrant an injunction, plaintiffs must show that the concrete expression of the Superman idea has been appropriated in defendants' program.

While the idea/expression distinction is crucial "in delineating the scope of protection to be afforded a copyrighted work, it is a 'difficult task . . . to distill the nonprotected idea from the protected expression.' " *Durham Industries, Inc. v. Tomy Corp., supra*, 630 F.2d at 912, quoting *Reyer v. Children's Television Workshop, supra*, 533 F.2d at 91. Such determinations must inevitably be *ad hoc* and often a matter of degree. *Id.* There are several attributes and actions of the Superman character and phrases from the Superman adventures used in "The Greatest American Hero" which are uniquely associated with Superman rather than with the idea of a superhero in general. Examples are scenes of Hinkley cruising over the city at night in a pose similar to that of Superman; lifting a car with one hand to impress his girl friend, reminiscent of a scene in "Superman, The Movie" in which Superman while still an infant saves his newfound father from injury by lifting the family's truck; and saying to himself while gazing in a mirror after first putting on the magic suit, "It's a bird, it's a plane, it's Ralph Hinkley." In addition, there are several references to the Superman characters Clark Kent and Lois Lane. Hinkley tells his girl friend that she is more fortunate than Lois because the latter never learned Clark Kent's true identity and the girl friend states to Hinkley's FBI partner that she is accompanying them to do the Lois Lane jokes.

Plaintiffs further claim that certain superman adventures depicted in the movie Superman have been appropriated by defendants.

■ A comparison of the characters Ralph Hinkley and Superman and their respective stories reveals, however, that they are so dissimilar as to preclude a finding of substantial similarity. "Even as to protected aspects of a work, it should be emphasized that under the law only *substantial* similarity will support a determination of infringement." *Durham Industries, Inc. v. Tomy Corp., supra*, 630 F.2d at 913 (emphasis in original). It is true that where substantial similarity is found, slight differences between a protected work and an accused work are not enough to bar relief for infringement and that identity or even near identity between the two works is not required. The ordinary observer test focuses on the similarities and not the differences. However, this Circuit has also recognized that "numerous differences tend to undercut substantial similarity." *Id.; Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65 (2d Cir. 1974).

■ Ralph Hinkley and Superman are very different characters and the differences between them lie in attributes that are essential to the portray of each. Hinkley is an ordinary man who reluctantly takes on abnormal abilities through the magic costume and is comically inept. Superman is naturally endowed with superhuman powers which he wields with grace and confidence. Hinkley is slight of build, nonmuscular, informally dressed, weak chinned, and has long blond corkscrew curls. We all know that this is the antithesis of the Superman character image. Moreover, Hinkley's personal life is in an unmanly shambles whereas our Superman is a "square." When Hinkley flies he collides with buildings; it takes a couple of bungling attempts before Hinkley can crash through a wall. While Hinkley is impervious to bullets, he at first cowers and trembles when the villains fire at him. Hinkley does not perform his superhuman feats in the same manner in which Superman performs. Similarly, references made to the Superman characters Clark Kent and Lois Lane and to famous Superman slogans are made in order to contrast Ralph Hinkley and Superman. Indeed, all the takings from Superman are portrayed in "The Greatest American Hero" in a way that humorously make the point that Ralph Hinkley cannot measure up to Superman. Such use cannot be characterized as substantially similar to the copyrighted material.

The court also holds plaintiffs are not entitled to injunctive relief since references made to Superman and uses of Superman's traits in "The Greatest American Hero" constitute a fair use of plaintiffs' copyrighted works. Fair use is "a privilege in others than the owner of the copyright to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner by the copyright." *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). Section 107 of the Copyright Act of 1976, 17 U.S.C. § 107, codified the common law doctrine of fair use and sets forth the scope of this doctrine, as well as several criteria to be considered. It provides:

"Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phono-records or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work. (17 U.S.C. Section 107).

Defendants contend that "The Greatest American Hero" is a parody of "Superman." It takes some of the copyrighted Superman material and uses it as a springboard to create an independent intellectual property. In the leading case, *Berlin v. E.*

C. *Publications, Inc.*, 329 F.2d 541, 545 (2d Cir.), *cert. denied*, 379 U.S. 822, 85 S.Ct. 46, 13 L.Ed.2d 33 (1964), the Court of Appeals recognized the legitimate use of copyrighted material in an incongruous manner in order to evoke a laugh. "The humorous effect achieved when a familiar line is interposed in a totally incongruous setting, traditionally a tool of paodists, scarcely amounts to a 'substantial' taking, if that standard is not to be woodenly applied." The Court held that where the parody has neither the intent nor the effect of fulfilling the demand for the original and where the parodist does not appropriate a greater amount of the original work than is necessary to conjure up the object of the parody, a finding of infringement is improper. *Id.* The Court of Appeals recently affirmed this freedom accorded to parodies in a short per curiam opinion upholding the district court's decision that a song in a television comedy skit, "I Love Sodom" to the tune of "I Love New York," was protected fair use, stating that "in today's world of often unrelieved solemnity, copyright law should be hospitable to the humor of parody...." *Elsmere Music v. National Broadcasting Co.*, 623 F.2d 252, 253 (2d Cir. 1980).

The story of Ralph Hinkley, an average citizen whose life becomes humorously complicated by his inept management of superhuman powers, pokes fun at Superman and other characters in the superhero genre. As a comedy that parodies American superheroes, "The Greatest American Hero" has a very different appeal from Superman, a real superhero, and plaintiffs have not sufficiently proven that it will reduce demand for movies and programs about Superman, and products bearing the Superman image.

The court also finds that defendants did not make more extensive use of the original than was necessary to recall or conjure up Superman. As stated above, "The Greatest American Hero," employes well-known slogans, postures and actions from Superman only to contrast them with the bungling efforts of Ralph Hinkley:

"[t]he concept of 'conjuring up' an original came into the copyright law not as a limitation on how much of an original may be used, but as a recognition that a parody frequently needs to be more than a fleeting evocation of an original in order to make its humorous point. . . . A parody is entitled at least to 'conjure up' the original. Even more extensive use would still be fair use, provided the parody builds upon the original, using the original as a known element of modern culture and contributing something new for humorous effect or commentary."

*Elsmere Music v. National Broadcasting Co., supra,* 623 F.2d at 253 n. 1 (citation omitted).

■ Plaintiffs' argument that the fact that defendants' use of Superman's attributes was for commercial gain precludes protection under the fair use doctrine is not persuasive. Such an argument was expressly rejected in *Berlin v. E. C. Publications, Inc., supra,* 329 F.2d at 543, and by implication in *Elsmere Music v. National Broadcasting Co., supra,* which involved a television show produced for commercial profit.

In sum, the court holds that plaintiffs have not met their burden of showing that there is a substantial likelihood that they will succeed on the merits as to their copyright infringement claim since they have not sufficiently established that defendants' program "The Greatest American Hero" is substantially similar to plaintiffs' copyrighted interest in Superman.

### b) Lanham Act and Unfair Competition Claims

■ In addition to their claim that defendants are guilty of copyright infringement, plaintiffs contend that defendants' program and advertisements violate state and federal unfair competition law. The touchstone of both false designation of origin under the Lanham Act and unfair competition under New York law is the likelihood that prospective purchasers or viewers will be misled or confused by the defendant's use of the trademark in question.

*Menley & James Laboratories, Ltd. v. Approved Pharmaceutical Corp.,* 438 F.Supp. 1061, 1066 (N.D.N.Y.1977). The ordinary observer/substantial similarity test that this court applied in considering plaintiff's copyright infringement claim, then, is very close to the standard used in unfair competition cases. *See, Ideal Toy Corp. v. Kenner Products Division of General Mills Fun Group Inc.,* 443 F.Supp. 291, 306 (S.D.N.Y. 1977). The court need not repeat the details of its discussion of the similarities and differences in plaintiffs' and defendants' works.

■ The crux of a claim under the Lanham Act is whether there is any substantial likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled or confused as to the source of the product in question. *McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1130 (2d Cir. 1979). It is very unlikely that the viewers of "The Greatest American Hero" will believe that the movie was created, or sponsored, or produced by the owners of Superman. To make absolutely sure, however, the court will require a written and oral notice that the film about to be shown is not created by, sponsored by, or connected with the creators, producers, or distributors of Superman.

To the extent that the defendants' promotional spots have used concept or trait unique to Superman, plaintiffs may be entitled to damage after trial.

■ Neither have plaintiffs established that defendants' show was an attempt to pass off or palm off plaintiffs' work or that it dilutes the distinctiveness of the Superman trademark. Again, the essential distinctions between Ralph Hinkley and Superman which defendants purposely convey in their movie defeat these unfair competition claims. Defendants have not attempted to fraudulently misrepresent that their program is produced by or otherwise associated with the producers of the Superman movies, television shows and comics. *See Hygienic Specialties Co. v. H. G. Salzman, Inc.,* 302 F.2d 614 (2d Cir. 1962); *Remco*

*Industries, Inc. v. Toyomenka, Inc.*, 286 F.Supp. 948 (S.D.N.Y.), *aff'd*, 397 F.2d 977 (2d Cir. 1968). Plaintiffs have not shown the gravamen of a dilution complaint that the continuing use of defendants' mark will inexorably have an adverse effect upon the value of plaintiffs' mark because if plaintiffs' mark is not protected it will eventually be deprived of its distinctiveness. *See King Research, Inc. v. Shulton, Inc.*, 324 F.Supp. 631, 638 (S.D.N.Y.1971), *aff'd*, 454 F.2d 66 (2d Cir. 1972). New York courts in applying the anti-dilution statute, § 368–d of the New York General Business Law, have often depended upon some confusion or deception where injunctive relief has been awarded. *Id.* at 639. Accordingly, the court finds that plaintiffs have not established a likelihood of success on the merits of their unfair competition and trademark infringement claims, as to defendants' pilot since the important differences between the characters, from which the humor of "The Greatest American Hero" is derived, make it highly unlikely that the viewing public will be confused or deceived.

### 2. The Balance of Hardships

Plaintiffs may prevail under the second prong of this Circuit's standard for granting a preliminary injunction if they show irreparable injury, sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of hardships tipping decidedly in their favor. Although this case involves questions that are fair ground for litigation, the court finds that plaintiffs have not established that the potential harm to them if defendants' pilot is shown is decidedly greater than the potential harm to defendants if the pilot is enjoined.

Plaintiffs ask this court to enjoin a scheduled nationwide television program on the very eve of broadcast. Defendants, as the evidence disclosed, have spent millions on the production and promotion of "The Greatest American Hero." Press releases about the pilot went out as early as January, 1981, and promotional spots have been regularly aired on television since February 28 and with intensity since that time. Yet plaintiffs have waited until two days before the pilot was scheduled to go on the air to seek this drastic relief.

Defendants' evidence showed that a last minute stopping of their television movie will injure them by damaging their relations with their affiliates and putting them in an unfavorable light with the public who will turn on their television sets tonight expecting to watch the premiere of "The Greatest American Hero." ABC also stands to lose millions of dollars in advertising revenues. In addition, ABC hopes to use the ratings of the program scheduled for broadcast tonight as a basis for its determination of whether to put "The Greatest American Hero" in its new fall programming schedule.

On the other hand, plaintiffs' claims that they will be harmed by the showing of "The Greatest American Hero" because their profits on the distribution of "Superman II" will be decreased and interest in Superman television shows, comic books and products will be reduced is at best speculative and is not supported by any convincing evidence at this juncture.

For all the reasons discussed above, plaintiffs' motion for preliminary injunction is denied.