The COCA–COLA COMPANY,
Plaintiff-Appellant,

v.

TROPICANA PRODUCTS, INC.,
Defendant-Appellee.

No. 1524, Docket 82–7422.

United States Court of Appeals,
Second Circuit.

Argued July 16, 1982.

Decided Sept. 29, 1982.

Rehearing and Rehearing In Banc
Denied Nov. 16, 1982.

Thomas C. Morrison, New York City (Christine H. Miller, Patterson, Belknap, Webb & Tyler, New York City, of counsel), for plaintiff-appellant.

Frank L. Butler, Chicago, Ill. (Logan T. Johnston, Neil E. Holmen, Winston & Strawn, Chicago, Ill., of counsel), for defendant-appellee.

Before CARDAMONE and WINTER, Circuit Judges, and MALETZ,[*] Judge, Court of International Trade.

CARDAMONE, Circuit Judge:

A proverb current even in the days of ancient Rome was "seeing is believing." Today, a great deal of what people see flashes before them on their TV sets. This case involves a 30-second television commercial with simultaneous audio and video components. We have no doubt that the byword of Rome is as valid now as it was then. And, if seeing something on TV has a tendency to persuade a viewer to believe, how much greater is the impact on a viewer's credulity when he both sees and hears a message at the same time?

In mid-February of 1982 defendant Tropicana Products, Inc. (Tropicana) began airing a new television commercial for its Premium Pack orange juice. The commercial shows the renowned American Olympic athlete Bruce Jenner squeezing an orange while saying "It's pure, pasteurized juice as it comes from the orange," and then shows Jenner pouring the fresh-squeezed juice into a Tropicana carton while the audio states "It's the only leading brand not made with concentrate and water."

Soon after the advertisement began running, plaintiff Coca-Cola Company (Coke, Coca-Cola), maker of Minute Maid orange juice, brought suit in the United States District Court for the Southern District of New York, 538 F.Supp. 1091, against Tropicana for false advertising in violation of section 43(a) of the Lanham Act. The statute provides that anyone who uses a false description or representation in connection with goods placed in commerce "shall be liable to a civil action by [anyone] ... who believes that he is or is likely to be damaged by the use of ... such false description or representation." 15 U.S.C. § 1125(a) (1976). Coke claimed the commercial is false because it incorrectly represents that Premium Pack contains unprocessed, fresh-squeezed juice when in fact the juice is pasteurized (heated to about 200° Fahrenheit) and sometimes frozen prior to packaging. The court below denied plaintiff's motion for a preliminary injunction to enjoin further broadcast of the advertisement pending the outcome of this litigation. In our view preliminary injunctive relief is appropriate.

## I

### Scope of Review

A party seeking issuance of a preliminary injunction in this Circuit must always show that it is likely to suffer possible irreparable harm if the requested relief is not granted. In addition, it must demonstrate either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions go-

---

[*] Honorable Herbert N. Maletz, Judge, United States Court of International Trade, sitting by designation.

ing to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir. 1982); *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979) (per curiam); *Caulfield v. Board of Education,* 583 F.2d 605, 610 (2d Cir. 1978); *see* Mulligan, *Preliminary Injunction in the Second Circuit,* 43 Brooklyn L.Rev. 831 (1977).

The grant or refusal to grant interlocutory injunctive relief rests in the sound discretion of the district court judge. Upon appeal, the order granting or denying a preliminary injunction will not be disturbed unless it results from an abuse of judicial discretion, *see Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–68, 45 L.Ed.2d 648 (1975), or is contrary to some rule of equity, *Meccano, Ltd. v. John Wanamaker, New York,* 253 U.S. 136, 141, 40 S.Ct. 463, 465, 64 L.Ed. 822 (1920).

■ As so often is the case, the rule is easily stated; its precise meaning is more elusive. In reviewing the action of a trial court, an appellate court is not limited to reversing only when the lower court's action exceeds any reasonable bounds and to rubber-stamping with the imprimatur of an affirmance when it does not. *Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190, 1197 (2d Cir. 1971) (Friendly, C. J.). Congress, in enacting 28 U.S.C. § 1292(a)(1) to give appellate courts jurisdiction over interlocutory injunctions, surely did not envision that appellate review should be limited to a choice between the monster Scylla and the abyss of Charybdis. *See Omega Importing,* 451 F.2d at 1197; *Carroll v. American Federation,* 295 F.2d 484, 488 (2d Cir. 1961). The scope of review over the exercise of a trial court's discretion is broader, lying between—not relegated to—these two extremes. Thus, as Learned Hand defined it, abuse of discretion "means no more than that we will not intervene, so long as we think that the [discretion exercised] is within permissible limits," *Barnett v. Equitable Trust Co. of New York,* 34 F.2d 916, 920 (2d Cir. 1929), *modified and aff'd sub nom. United States v. Equitable Trust Co. of New York,* 283 U.S. 738, 51 S.Ct. 639, 75 L.Ed. 1379 (1930).[1]

■ An abuse of discretion may consist of an error of law, an error of fact, or an error in the substance or form of the trial court's order. For example, the trial judge may have an erroneous view of the law which controls the pending suit—a statute, standard or line of cases may be misapprehended—or the judge may have misapplied the rules governing the issuance of injunctive relief. The Supreme Court has viewed an error of law as an abuse of a trial court's discretion. *See United States v. Corrick,* 298 U.S. 435, 438, 56 S.Ct. 829, 830, 80 L.Ed. 1263 (1936). Our Court has reasoned that where a trial court's denial of an injunction is based "in substantial measure upon conclusions of law which can and should be reviewed because of their basic nature" in the pending litigation, the order may be reversed and the case remanded in light of the appropriate legal principles. *Ring v. Spina,* 148 F.2d 647, 650 (2d Cir. 1945), *cert. denied,* 335 U.S. 813, 69 S.Ct. 30, 93 L.Ed. 368 (1948).

Beginning decades ago, we have not hesitated to reverse an order denying a preliminary injunction where the district court reached an erroneous conclusion on the facts before it, *see Schey v. Turi,* 294 F. 679, 680 (2d Cir. 1923); *Palmer v. Superior Manufacturing Co.,* 210 F. 452, 453 (2d Cir. 1913); or, as stated now under Rule 52(a) of the Federal Rules of Civil Procedure, where the findings of fact are clearly erroneous, *see Unicon Management Corp. v. Koppers Co., Inc.,* 366 F.2d 199, 203 (2d Cir. 1966). Further, an abuse of discretion may be found in the form that the order itself takes, e.g., an injunction may be too broad

---

1. Stated another way, an abuse of a trial court's discretion will be found where an "appellate court is of [the] opinion that there was commission of an error of law," a judgment "clearly against logic" or a conclusion "against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing." Black's Law Dictionary 10 (5th ed. 1979) (citations omitted).

or too long in duration, or several injunctions may issue where one will do, *see Donovan v. Bierwirth*, 680 F.2d 263, 276–77 (2d Cir. 1982).

These various errors of law, fact, substance and form, singly or in combination, may affect the relief granted at the trial level. Upon review, if an error is found which did not actually form the basis for the determination whether the injunction issued or not, no abuse of discretion will have occurred because such an error will be deemed harmless. However, when the error, whatever its nature, is the *predicate* for the trial court's order, an appellate court must reverse because in such case the order would plainly result from an improvident exercise of the trial court's discretion.

An appellate court discharges its statutory obligation to review when it independently examines the relevant factors considered by the trial court in reaching its conclusion. *See In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954). The appellate court presupposes that the trial judge understood and applied the applicable law and took into account all the circumstances of the case. Reversal is warranted only upon a firm conviction that such presupposition was, in a given case, misplaced. A trial court's discretion should not be disturbed where a question as to its validity is perched precariously, as though on a swaying aerial catwalk, subject to doubt and uncertainty.

We believe that the outlined scope of review and the authorities cited suffice for us to reverse in the instant case where the trial court, by a misapplication of the irreparable injury standard (discussed at II, *infra*), concluded that Coca-Cola had failed to show an essential requirement for injunctive relief. This error of law constitutes an abuse of discretion which mandates reversal. In addition, we conclude that the trial court's finding of no facial falseness in defendant's TV commercial (discussed at III, *infra*) was an error of fact.

## II

### *Irreparable Injury*

Perhaps the most difficult element to demonstrate when seeking an injunction against false advertising is the likelihood that one will suffer irreparable harm if the injunction does not issue. It is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement. Too many market variables enter into the advertising-sales equation. Because of these impediments, a Lanham Act plaintiff who can prove actual lost sales may obtain an injunction even if most of his sales decline is attributable to factors other than a competitor's false advertising. *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 191 (2d Cir. 1980). In fact, he need not even point to an actual loss or diversion of sales. *Id.* at 190–91.

The Lanham Act plaintiff must, however, offer something more than a mere subjective belief that he is likely to be injured as a result of the false advertising, *id.* at 189; he must submit proof which provides a reasonable basis for that belief, *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 278 (2d Cir. 1981). The likelihood of injury and causation will not be presumed, but must be demonstrated in some manner. *Johnson & Johnson*, 631 F.2d at 190.

Two recent decisions of this Court have examined the type of proof necessary to satisfy this requirement. Relying on the fact that the products involved were in head-to-head competition, the Court in both cases directed the issuance of a preliminary injunction under the Lanham Act. *Vidal Sassoon*, 661 F.2d at 277; *Johnson & Johnson*, 631 F.2d at 189–91.[2] In both decisions the Court reasoned that sales of the plain-

**2.** In *Vidal Sassoon* it was assumed that two different shampoos competed for the same market, but in *Johnson & Johnson* the element of competition had to be proven because the

two products, baby oil and a depilatory containing baby oil, were not obviously competing for the same consumer dollars.

tiffs' products would probably be harmed if the competing products' advertising tended to mislead consumers in the manner alleged.[3] Market studies were used as evidence that some consumers were in fact misled by the advertising in issue. Thus, the market studies supplied the causative link between the advertising and the plaintiffs' potential lost sales, and thereby indicated a likelihood of injury.

Applying the same reasoning to the instant case, if consumers are misled by Tropicana's commercial, Coca-Cola probably would suffer irreparable injury. Tropicana and Coca-Cola are the leading national competitors for the chilled (ready-to-serve) orange juice market. If Tropicana's advertisement misleads consumers into believing that Premium Pack is a more desirable product because it contains only fresh-squeezed, unprocessed juice, then it is likely that Coke will lose a portion of the chilled juice market and thus suffer irreparable injury.

■ Evidence in the record supports the conclusion that consumers are likely to be misled in this manner. A consumer reaction survey conducted by ASI Market Research, Inc. and a Burke test, measuring recall of the commercial after it was aired on television, were admitted into evidence, though neither one was considered by the district court in reference to irreparable injury. The trial court examined the ASI survey regarding the issue of likelihood of success on the merits, and found that it contained various flaws which made it difficult to determine for certain whether a large number of consumers were misled. We do not disagree with those findings. We note, moreover, that despite these flaws the district court ruled that there were at least a small number of *clearly* deceived ASI interviewees. Our examination of the Burke test results leads to the same conclusion, i.e., that a not insubstantial number of consumers were clearly misled by the de-

fendant's ad. Together these tests provide sufficient evidence of a risk of irreparable harm because they demonstrate that a significant number of consumers would be likely to be misled. The trial court should have considered these studies on the issue of irreparable injury. If it had, we think that it would surely have concluded, as did this Court in *Vidal Sassoon* and *Johnson & Johnson,* that the commercial will mislead consumers and, as a consequence, cause them to shift their purchases from plaintiff's product to defendant's. Coke, therefore, demonstrated that it is likely to suffer irreparable injury.

### III

#### *Likelihood of Success on the Merits*

Once the initial requisite showing of irreparable harm has been made, the party seeking a preliminary injunction must satisfy either of the two alternatives regarding the merits of his case. We find that Coca-Cola satisfies the more stringent first alternative because it is likely to succeed on the merits of its false advertising action.

■ Coke is entitled to relief under the Lanham Act if Tropicana has used a false description or representation in its Jenner commercial. *See* 15 U.S.C. § 1125(a). When a merchandising statement or representation is literally or explicitly false, the court may grant relief without reference to the advertisement's impact on the buying public. *American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160, 165 (2d Cir. 1978); *American Brands, Inc. v. R. J. Reynolds Tobacco Co.,* 413 F.Supp. 1352, 1356 (S.D.N.Y.1976). When the challenged advertisement is implicitly rather than explicitly false, its tendency to violate the Lanham Act by misleading, confusing or deceiving should be tested by public reaction. *American Home Products,* 577 F.2d at 165.

■ In viewing defendant's 30-second commercial at oral argument, we concluded

---

**3.** In *Vidal Sassoon* consumers were allegedly misled to believe that Body on Tap shampoo was an all-around superior product. In *Johnson & Johnson* consumers were allegedly mis-

led into thinking that using NAIR depilatory with baby oil would obviate the need for using baby oil alone to moisturize the skin after shaving.

that the trial court's finding that this ad was not facially false is an error of fact. Since the trial judge's finding on this issue was based solely on the inference it drew from reviewing documentary evidence, consisting of the commercial, we are in as good a position as it was to draw an appropriate inference. *See San Filippo v. United Brotherhood of Carpenters & Joiners,* 525 F.2d 508, 511 (2d Cir. 1975). We find, therefore, that the squeezing-pouring sequence in the Jenner commercial is false on its face. The visual component of the ad makes an explicit representation that Premium Pack is produced by squeezing oranges and pouring the freshly-squeezed juice directly into the carton. This is not a true representation of how the product is prepared. Premium Pack juice is heated and sometimes frozen prior to packaging. Additionally, the simultaneous audio component of the ad states that Premium Pack is "pasteurized juice as it comes from the orange." This statement is blatantly false— pasteurized juice does not come from oranges. Pasteurization entails heating the juice to approximately 200° Fahrenheit to kill certain natural enzymes and microorganisms which cause spoilage. Moreover, even if the addition of the word "pasteurized" somehow made sense and effectively qualified the visual image, Tropicana's commercial nevertheless represented that the juice is only squeezed, heated and packaged when in fact it may actually also be frozen.

■ Hence, Coke is likely to succeed in arguing that Tropicana's ad is false and that it is entitled to relief under the Lanham Act. The purpose of the Act is to insure truthfulness in advertising and to eliminate misrepresentations with reference to the inherent quality or characteristic of another's product, *Vidal Sassoon,* 661 F.2d at 278. The claim that Tropicana's Premium Pack contains only fresh-squeezed, unprocessed juice is clearly a misrepresentation as to that product's inherent quality or characteristic. Since the plaintiff has satisfied the first preliminary injunction alternative, we need not decide whether the balance of hardships tips in its favor.

Because Tropicana has made a false representation in its advertising and Coke is likely to suffer irreparable harm as a result, we reverse the district court's denial of plaintiff's application and remand this case for issuance of a preliminary injunction preventing broadcast of the squeezing-pouring sequence in the Jenner commercial.