**WARREN CORPORATION, Plaintiff,**

v.

**GOLDWERT TEXTILE SALES, INC., and Biltex International Textiles, Inc., Defendants.**

No. 83 Civ. 4847 (RLC).

United States District Court, S.D. New York.

Feb. 6, 1984.

Gadsby & Hannah, New York City, for plaintiff; Harry H. Wise, III, New York City, of counsel.

Hahn & Hessen, New York City, for defendant Goldwert Textile Sales, Inc.; Melvin Beinart, New York City, of counsel.

ROBERT L. CARTER, District Judge.

Warren Corporation ("Warren"), a manufacturer of woolen and specialty materials, has moved for a preliminary injunction pursuant to Rule 65, F.R.Civ.P., to enjoin defendant Goldwert Textile Sales, Inc. ("Goldwert")[1] from using allegedly false labels in connection with a certain fabric known as "Saturno". Plaintiff claims that defendant has violated both the Lanham Act, 15 U.S.C. § 1125(a), and the Wool Products Labeling Act of 1939 ("the Wool Act"), 15 U.S.C. §§ 68a and b, by misrepresenting the camel's hair content of the fabric. Defendant has cross-moved for summary judgment pursuant to Rule 56(b), F.R.

1. On September 2, 1983 Judge Lowe signed a stipulation and order for final judgment against Biltex International Textiles, Inc.

Civ.P., alleging that plaintiff lacks standing to sue under either the Lanham or Wool Acts, and that it has failed to state a claim. Because plaintiff, as explained below, has not been able to demonstrate that it will suffer irreparable injury if a preliminary injunction is not granted, its request for relief is denied. Defendant's motion for summary judgment is denied in part. The Court finds that plaintiff has standing to sue pursuant to the Lanham Act and has stated a claim thereunder.

*Background*

Plaintiff manufactures 100% camel's hair fabric. In or around November, 1982, plaintiff maintains it learned from its customers that Goldwert was offering and selling fabric allegedly containing 92% camel's hair and 8% nylon. (Trugerman Affidavit, ¶ 1). In January, 1983, Warren acquired a three yard sample of Saturno, which it sent to Dr. S.J. Golub at Albany International Research Co. for quantitative fiber analysis and recycled fiber analysis. The report Warren received from Golub at the end of January described the fiber content of Saturno as follows: 76.2% camel's hair; 12.0% wool, 11.8% nylon, and a trace of fur. Warren argues that Goldwert's false description of Saturno, which it claims effectively advertises the product as a substantial equivalent of pure camel's hair fabric, has detracted from its own sale of the 100% camel's hair material since the former can be sold much more cheaply.

Defendant asserts that it has been selling its blended fabric since approximately the end of 1981. It imports the fabric from an Italian supplier, Lanificio Gardena S.P.A. ("Gardena"), who has conducted tests on the material on at least two separate occasions with results that have indicated that the camel's hair/nylon blend is well within permissable standards for fabric described as 92% camel's hair and 8% nylon. Goldwert challenges Golub's report and claims that when read carefully, the report supports the validity of the 92%/8% Saturno description. Moreover, Goldwert maintains that Warren and Goldwert are not competitors since the blended fabric is

of a different price and quality than Warren's product, which renders "sheer sophistry," it argues, Warren's allegations of competitive injury.

*Determination*

a. Summary Judgment

Defendant's motion for summary judgment is premised on plaintiff's lack of standing to sue for the alleged mislabeling of the "Saturno" fabric. Defendant argues that the mislabeling violates the Wool Act under which, it contends, plaintiff has no standing. It apparently concedes plaintiff's standing to sue pursuant to the Lanham Act, but maintains that plaintiff has not alleged any violation thereof. The argument succeeds in its first part only.

■ Plaintiff has described a violation of the Wool Act. The Act specifically proscribes misbranding, which it defines as falsely or deceptively tagging, labeling, or otherwise identifying the product without showing "the percentage of the total fiber weight of the wool product of (1) wool; (2) recycled wool; (3) each fiber other than wool if said percentage by weight of such fiber is 5 percentum or more, and (4) the aggregate of all other fibers." 15 U.S.C. § 68b. However, pursuant to section 68d, the Act "shall be enforced by the Federal Trade Commission...." Since there is no authorization for private actions, Warren cannot create a private right of action under the Wool Act, nullifying the Act's own provisions, by asserting its standing to sue under the Lanham Act. *Cf. Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 532 F.Supp. 1203, 1221 n. 30 (S.D.N.Y.1982) (Edelstein, J.), *rev'd on other grounds*, 689 F.2d 1127 (2d Cir.1982). Summary judgment must be granted with respect to the Wool Act claim.

Neither the Wool Act nor judicial precedent indicate, however, that that Act provides the exclusive remedy of mislabeling or misbranding of a wool product. "[A]ny person who believes that he or she is likely to be damaged by the use of any such false description or representation" may sue for violation of the Lanham Act. 15 U.S.C.

§ 1125(a). Consequently, plaintiff can proceed under the Lanham Act if it has set out properly the elements of a cause of action under that Act. It has.

Section 43(a) contains two theories of liability. It makes actionable the use of a false designation of origin or of any false description of one's product in connection with goods or services, or any containers for goods. *Id.* Under the first theory of liability, plaintiff must prove that the defendant's goods "are likely to be thought to have originated with, or have been sponsored by the true owner" of the product's mark or distinguishing characteristic. *Societe Comptoir De L'Industrie Cotonniere Establissements Boussac v. Alexander's Dep't. Stores, Inc.*, 299 F.2d 33, 36 (2d Cir.1962); *see, e.g., Quabaug Rubber Co. v. Fabiano Shoe Co. Inc.*, 567 F.2d 154, 160 (1st Cir.1977); *Philip Morris, Inc. v. R.J. Reynolds Tobacco Co.*, 188 U.S.P.Q. 289, 292 (S.D.N.Y.1975) (Stewart, J.). Plaintiff does not advance a claim under this theory. Rather, it relies on the second theory of liability, false description.

■■■ The key under this theory is not confusion of source, but confusion as to the attributes of a competing product. Plaintiff must show that the allegedly false description provides a competitor with an inappropriate advantage. *Springs Mills, Inc. v. Ultracashmere House, Ltd., supra,* 532 F.Supp. at 1220.[2] *See Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190–191 (2d Cir.1980). It takes little to read plaintiff's claims in this light. By alleging that defendant's false description of its Saturno fabric makes the material appear almost identical to plaintiff's own, thus concealing the reason for the cost difference between the products, plaintiff in effect charges defendant with gaining an unfair competitive advantage by using the false description. The claim fits squarely under the Lanham Act.

The Court finds no merit in defendant's attempt to draw a distinction between false advertising, prohibited by the Lanham Act, and the use of false labels, which defendant insinuates is beyond the Act's prohibitions. "[A]dvertising is not limited to newspaper, television or radio announcements; any notice addressed to the public serves the same purpose." Altman, 1A *Callmann Unfair Competition Trademarks and Monopolies,* (4th Ed.1981) § 5.07 at 59. Invoices, price lists, display cards, and packages are part of the advertising realm. Indeed, "[m]isbranding is one species of false advertising, for 'most if not all labeling is advertising.'" *Id.* § 5.08 at 63. Moreover, nothing in the language of the Lanham Act itself remarks on a distinction between false advertising and false labeling.

■■■ While, as defendant underscores, "courts have been careful to recognize that § 43(a), 15 U.S.C. § 1125(a) does not have boundless application as a remedy for unfair trade practices but is limited to false advertising as that term is generally understood," *Alfred Dunhill Ltd. v. Interstate Cigar Co. Inc.*, 499 F.2d 232, 237 (2d Cir. 1974), that term conveys not collected instances of advertising techniques but a core concept. Thus, the false descriptions proscribed by the Act are only those which confuse the public. *Springs Mills, Inc. v. Ultracashmere House, Ltd.*, 689 F.2d 1127, 1129; *Clairol Inc. v. Save-Way Industries, Inc.*, 210 U.S.P.Q. 459, 469 (S.D.Fla.1980); *see Callmann, supra,* § 5.04 and cases cited therein. Relying on common sense, it must be admitted that false descriptions of a product, contained in the product's label, share with newspaper advertisements and television and radio commercials the ability to engender consumer confusion both as to the origin and content of that product. Excluding labels from the Act's purview

---

**2.** *Cf.* Altman, 1A *Callmann Unfair Competition Trademarks and Monopolies,* (4th Ed.1981) § 5.04.

> [U]nder the broad language of section 43(a) the courts should recognize that the plaintiff need not even be 'in the same line of business and in competition with defendant'; it should be sufficient... in the case of a false description of goods or services, that he is likely to be damaged even if, for instance, the parties are doing business on different economic levels. (cites omitted) *Id.* at 35.

would arbitrarily limit the Act's remedial purpose.[3] Labels, as well as other aspects of a product's packaging, must be scrutinized to determine whether confusion is likely. *Westward Co. v. Gem Products, Inc.*, 570 F.Supp. 943, 947 (E.D.Mich.1983).

■ Finally, defendant's argument on the merits of plaintiff's claim is beside the point. Whether the labels are accurate, and therefore, not misleading, is a question that must be deferred until trial.[4] In any case, the issue does not, as defendant seems to suggest, justify an award of summary judgment in its favor. Rather, it makes clearer the impropriety of granting summary judgment in this case. Accordingly, while the Court awards defendant summary judgment with respect to plaintiff's claim under the Wool Act, summary judgment on the Lanham Act claim is denied.

b. Preliminary Injunctive Relief

[7, 8] To obtain a preliminary injunction in this Circuit, plaintiff has the burden of proving (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party seeking relief. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). The standard is not changed by the fact that plaintiff's underlying claim concerns a violation of the Lanham Act. *Bell & Howell: Mamiya Co. v. Masel Supply Co.* ("Bell & Howell"), 719 F.2d 42, 45 (2d Cir. 1983). *See also Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 316 (2d Cir.1982); *Warner Bros., Inc. v. American Broadcasting Cos.*, 523 F.Supp. 611, 614–615 (S.D.N.Y.) (Motley, J.) *aff'd* 654 F.2d 204 (2d Cir.1981).

■ It is generally acknowledged that irreparable injury is at once "perhaps the single most important prerequisite for the issuance of a preliminary injunction," 11 C. Wright & Miller, *Federal Practice and Procedure*, § 2948 at 431 (1973) cited in *Bell & Howell, supra*, 719 F.2d at 45, and "perhaps the most difficult element to demonstrate when seeking an injunction against false advertising." *Coca-Cola Co. v. Tropicana Products, Inc., supra*, 690 F.2d at 316. As a result, "a Lanham Act plaintiff who can prove actual lost sales may obtain an injunction even if most of his sales decline is attributable to factors other than a competitor's false advertising." *Id.* If a plaintiff cannot show such actual diminishment, it must adduce reasonable support for its allegations that the false advertising will injure its business; the likelihood of injury and causation will not be presumed. *Id. See Vidal Sasson, Inc. v. Bristol-Meyers Co.*, 661 F.2d 272, 278 (2d Cir.1981); *Johnson & Johnson v. Carter-Wallace, Inc., supra*, 631 F.2d at 190–91 (2d Cir.1980). "The plaintiff complaining of false advertising must show that 'a significant number of consumers would be likely to be misled.'" *Bell & Howell, supra*, 719 F.2d at 46 citing *Coca-Cola Co. v. Tropicana Products, Inc., supra*, 690 F.2d at 317.

■ Warren has not produced any evidence of actual sales loss. Nor has it shown that a significant number of consumers would be likely to be misled by the alleged labeling deception. In its brief, plaintiff's demonstration of irreparable harm is limited to the statement that "it is very difficult, if not impossible to prove all the sales the defendants are improperly diverting to themselves." (Plaintiff's Memorandum in Support of Motion for Preliminary Injunction at 4). Although the record also contains an assertion by plaintiff's sales representative, Martin Trugerman, that he had been advised by previous purchasers of Warren's 100% camel's hair fab-

---

3. *See CBS Inc. v. Springboard Int'l. Records,* 429 F.Supp. 563, 566 (S.D.N.Y.1976) (Tenney, J.) (section 43(a) of Lanham Act is "clearly remedial and should be broadly construed."); *see also Callmann, supra,* § 5.04 at 34 & n. 44.

4. *See Bell & Howell, supra,* 719 F.2d at 46, (generally inappropriate for federal court at preliminary injunction stage to give a final judgment on merits).

rics that they had not made purchases in 1983 because of Saturno's cheaper cost (Trugerman Affidavit ¶ 16), this single statement, devoid of specifics, is insufficient proof. The proof of irreparable harm accepted by this Circuit in the past has included consumer reaction surveys, *Coca-Cola Co. v. Tropicana Products, Inc., supra,* 690 F.2d at 317, and other types of market studies, *Vidal Sasson, Inc. v. Bristol-Meyers Co., supra,* 661 F.2d at 278, as well as evidence of competition between the advertised products. *Id.* In these cases the Court was able to examine such studies to determine their adequacy. Here, on the other hand, by making only a very minimal and vague effort to demonstrate the likelihood of injury and causation, plaintiff has not afforded the Court any opportunity to evaluate its claim seriously.[5] Therefore, plaintiff's request for a preliminary injunction must be denied.

IT IS SO ORDERED.

---

5. There was, it should be noted, ample time in which plaintiff might have conducted some research, if only to document an informal survey, among purchasers of its camel's hair fabric. Five months passed between the time plaintiff received the fabric analyses of Saturno from its expert and the time plaintiff commenced this action.