**The HERTZ CORPORATION, Plaintiff,**

v.

**AVIS, INC., Defendant.**

**No. 94 Civ. 7384 (JFK).**

United States District Court,
S.D. New York.

Nov. 3, 1994.

Patterson, Belknap, Webb & Tyler, New York City (Thomas C. Morrison, Robert W. Lehrburger, Hertz Corp., Paul M. Tschirhart, of counsel), for plaintiff.

Morrison, Cohen, Singer & Weinstein, New York City (Malcolm I. Lewin, Sarah C. Lichtenstein, Arlene R. Smoler, of counsel), for defendant.

## OPINION AND ORDER

KEENAN, District Judge.

Before the Court is the motion of plaintiff, pursuant to Fed.R.Civ.P. 65, for a preliminary injunction preventing defendant from falsely advertising a service, the "Return Valet" service, that it cannot provide. Defendant opposes plaintiff's application for a preliminary injunction.

The Court held a preliminary injunction hearing October 23, 1994. Submissions from the parties were received on October 26, 1994. For the reasons that follow, the motion is denied.

210

## FINDINGS OF FACT

Plaintiff Hertz Corporation (hereinafter "Hertz") sued defendant Avis, Inc. (hereinafter "Avis") on two causes of action. The first cause of action provides jurisdiction in this Court—"false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)." Complaint at ¶ 1. Hertz's other cause of action is for "false advertising and unfair competition in violation of New York law." *Id.*

The rent-a-car industry is extremely competitive and is dominated by five companies—Hertz, Avis, Budget, Alamo, and National. Hertz and Avis have long been number one and number two respectively. Because all of the top companies rent comparable cars at similar prices, the primary area of competition between the companies is service. The primary demand of customers is speed and convenience.

Most major airports require car rental companies to utilize remote lots for the pick-up and return of cars. Customers travel to and from these lots in shuttle busses. This procedure was designed to reduce the congestion that would otherwise result from all the rental car traffic.

Avis has recently begun advertising a new service allegedly available at major airports. In early October, Avis began advertising a "Return Valet" service. Avis represents that an Avis renter who is returning a car to a remote rental site at an airport would be met at the lot by an Avis driver who would then drive the renter to the terminal, allowing the renter to avoid the time-consuming shuttle bus. This is an attractive service to renters.

Avis's nationwide advertising of this service includes a television commercial, print advertisements and a brochure. The print advertisements have appeared in leading newspapers and magazines, including *The Wall Street Journal, USA Today, Business Week* and *Frequent Flyer Magazine.*

The commercial, first broadcast in early October, is scheduled to run through the end of December. The commercial features a man and a woman returning their Avis car to an airport with twenty minutes to catch their plane. The man expresses concern, but the woman tells him not to worry because Avis's new Return Valet service will get them to the terminal in time. The commercial shows the car pulling up to an Avis area with an "Avis Return Valet" sign. The Avis valet then drives the couple to the terminal telling them that he will have them there in five minutes. The man then says that he is not worried while the woman rolls her eyes. The commercial ends with the couple arriving at the terminal and the Avis valet handing them their baggage and waving goodbye.

This commercial is being broadcast (along with another unchallenged commercial espousing the same theme—"We're into the future ... We're into it now") during prime time television as well as during news programs and weekend sporting events. The commercial is being broadcast in major travel markets, including New York, Boston, Dallas, Chicago, San Francisco, Los Angeles, Miami and Washington D.C. Avis is spending in excess of $14 million for this campaign, including over $12 million on the television campaign. This is a very large expenditure for advertising in the industry.

Car rental operations are governed by contracts between the car rental companies and the airports. Avis has targeted the thirty-nine major airports that require shuttle busses for its Return Valet service. Hertz contends that Avis's advertising is false because a majority of the thirty-nine airports have told Avis that the Return Valet service will not be permitted.

Avis began its Return Valet service at different airports at different times, starting on May 31, 1994 at New Orleans International Airport and at Houston Intercontinental Airport. By late September, the service was operating at thirty-nine airports throughout the United States. Avis has now terminated the service at three airports—Sacramento, Minneapolis–St. Paul and Washington National Airport.

When Hertz learned of Avis's Return Valet service, it immediately undertook to initiate a similar service. Hertz canvassed the airports in question to see if such a service would be allowed. According to Hertz's investigation: fifteen airports have stated that

they will not allow the service; two airports involve Avis licensees who have elected not to offer the service; six airports are currently reviewing the service; and sixteen airports have agreed to permit the service. Among the airports that have stated that they will not allow the service are the following: Atlanta; Boston; Dallas–Fort Worth; JFK; LaGuardia; Miami; Newark; San Francisco; and Washington National. The undecided airports include Chicago (O'Hare) and Los Angeles.

Despite the stated refusal to allow the service by fifteen airports, Avis continues to operate its service at all of those airports but the three mentioned above. Avis states that, while it has received refusals, it is continuing to negotiate with those airports and continues to offer the service while negotiations continue. Avis is therefore operating its service at thirty-six of the thirty-nine airports targeted.

Hertz contends that it is injured by Avis's allegedly false advertising. Hertz contends that it will lose business to Avis as a result of the advertising. Hertz also contends that it will be injured by means of the "image enhancement" that Avis will receive on account of this service.

Hertz commissioned a consumer survey from Bellomy Research to support its contention that it will be injured by the advertising. Bellomy Research, given only a few days to prepare and conduct its survey, was forced to operate under very hurried conditions. 178 respondents were questioned at eleven geographically dispersed shopping malls. The majority of those respondents, after viewing the commercial, found that the service offered "speed" and "convenience." According to Lacy Bellomy, the founder and President of Bellomy Research, this result shows that the commercial is serving its intended purpose. In addition, according to the survey a majority of those polled believed that the service was available at "all airports" or "all major airports." This survey was criticized for Avis by Dr. Yoram Wind, a Professor of Marketing at the Wharton School of the University of Pennsylvania, for a variety of short comings that in Wind's estimation render it valueless.

Avis contends that Hertz's true concern in this lawsuit is that Avis has "outgunned" Hertz. Avis contends that, instead of competing with Avis in the marketplace, Hertz filed this lawsuit in order to distract Avis from its marketing strategy.

## CONCLUSIONS OF LAW

### I. Section 43(a) of the Lanham Act

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, provides:

(a)(1) Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities

shall be liable in a civil action by any person who believes that he or she is or is likely to be damages by such act.

Hertz's preliminary injunction motion attacks Avis's advertising campaign of its "Return Valet" service on the basis that it is literally false and that it is misleading.

### II. Preliminary Injunctions Generally

To obtain a preliminary injunction in this Circuit, the moving party has the burden of showing (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir. 1985) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir.1983) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979))). The burden upon the moving party is heightened when the movant, as plaintiff does here, seeks to disturb the status quo by ordering affirmative relief, as opposed to preserving the status quo by pro-

hibiting the non-movant from altering the status quo:

> Where ... the grant of the preliminary injunction will give the movant essentially all the relief [she] seeks, the injunction is often deemed mandatory rather than prohibitory, and a somewhat higher standard is applied, under which the movant must show a substantial likelihood of success on the merits, rather than merely a likelihood of success.

*Johnson v. Kay,* 860 F.2d 529, 540 (2d Cir. 1988); *see also id.* at 541 ("Mandatory injunctions, for which the higher standard is appropriate, are those that disturb the status quo by ordering affirmative relief, while prohibitory injunctions preserve the status quo.").

## III. Preliminary Injunctions under the Lanham Act

■ In order to obtain equitable relief under the Lanham Act, plaintiff Hertz must show either that "1) the challenged advertisement is literally false, or 2) while the advertisement is literally true, it is nevertheless likely to mislead or confuse consumers." *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir.1992). *See also McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir.1991). Hertz states in its Complaint that the challenged advertisement is false. In its post-hearing submission, Hertz argues that the commercial is both literally false and also misleading.

### A. Literal Falsity

Hertz's first argument for an injunction is that the advertising is literally false.

■ The Court may determine, based on its own review of an advertisement, that a literally true or a literally false message is conveyed or not conveyed. *See Coca–Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 317–18 (2d Cir.1982); *American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160, 165 (2d Cir.1978). The Court may rely on its own common sense and logic in interpreting the message of the advertisement. *See Johnson & Johnson v. GAC Int'l,*

*Inc.,* 862 F.2d 975, 980–82 (2d Cir.1988). The Court need not refer to consumer surveys when an advertising claim is alleged to be literally false on its face. *See Coca–Cola,* 690 F.2d at 317; *American Home Products,* 577 F.2d at 165.

■ In order to obtain an injunction, Hertz must prove to the Court that, by a preponderance of the evidence (*see McNeil,* 938 F.2d at 1549) that the unambiguous meaning of the advertisement is literally false. *See Coca–Cola,* 690 F.2d at 317–18; *American Home Products,* 577 F.2d at 165–66.

■ Hertz states that the literal message of the commercial—that Avis is offering a new Return Valet service that will substantially increase the speed and convenience of returning a car to the airport, and that the service is available at "major airports"—is false. Despite the fact that the service is currently operational at thirty-six major airports, Hertz argues that the advertising is false because the service has been disallowed by fifteen of thirty-nine airports (even though Avis continues to operate the service at twelve of the fifteen airports and continues to negotiate with those airports). Hertz argues that it is only a matter of time before such advertising is false, if it is not already, and therefore the advertising should be enjoined.

This Court disagrees. Hertz has failed to demonstrate that Avis's advertising, representing availability of the Return Valet service at major airports, is literally false. The undisputed facts are that Avis is currently operating the service at thirty-six of the thirty-nine major airports that utilize shuttle buses from remote locations. Hertz has therefore failed to meet its burden of proof, by a preponderance of the evidence, that the advertising is literally false and must be enjoined.

### B. Misleading

■ Hertz next claims that the commercial, while it may be literally true because the airports have not succeeded in policing the activity yet, is likely to mislead and confuse consumers and therefore they are entitled to

an injunction. Hertz again must prove this by a preponderance of the evidence in order to obtain an injunction. *See McNeil,* 938 F.2d at 1549.

■ Because Hertz claims that the commercial is misleading, Hertz must demonstrate, by extrinsic evidence, that the challenged commercial tends to mislead or confuse consumers. *See Johnson & Johnson * Merck,* 960 F.2d at 297. When the charge is that the advertisement is misleading, rather than literally false, it is not for the judge to determine, solely on his own reasoning, whether the advertisement is deceptive. *See id.* To prove that the advertisement is misleading, plaintiff must adduce evidence (generally in the form of reliable consumer surveys) that demonstrate how the advertisement is understood by the target audience. *See Coca–Cola,* 690 F.2d at 317. This Court must therefore analyze the findings of Hertz's consumer survey to determine whether consumers find the advertisement to be misleading. *See id.*

■ Based on that analysis, the Court does not find that the advertisement is misleading. First, there is evidence before the Court that the survey was not properly conducted and that the results reported do not fairly reflect the results of the study. Defendant pointed out, on cross examination of Mr. Bellomy, on direct examination of its own expert Dr. Wind, and in its post-hearing submission, that the survey employed a close-ended question that was inherently suggestive. There was also substantial evidence at the hearing that the coders who interpreted the respondents' answers may have been predisposed to code the answer "all airports" to the questions "Where is the service available?" The Court therefore does not credit the questionable findings of the expedited survey. Other than this survey, Hertz has adduced no other evidence that consumers are being misled.

The Court finds that the Hertz's conclusions as to consumer reaction to the survey— that the service offered "speed" and "convenience," and that the service was available at "all airports" or "all major airports"—are not sufficient to support a claim that the consumers were misled by the advertisement.

### C. Conclusion

Because Hertz has failed to prove, by a preponderance of the evidence, that the challenged commercial is either literally false or misleading in violation of the Lanham Act, this Court will not issue a preliminary injunction enjoining Avis from advertising its Return Valet service. It is therefore unnecessary for this Court to determine whether Hertz is able to establish the other prerequisites for injunctive relief.

## IV.  NEW YORK LAW CLAIMS

■ Hertz also asserts a state law claim, which sets forth a cause of action under New York General Business Law sections 349 and 350 for deceptive trade practice and false advertising respectively.

New York General Business Law section 349 states, in relevant part:

§ 349  Deceptive acts and practices unlawful

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful

\*       \*       \*       \*       \*       \*

(b) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.

New York General Business Law section 350 states, in relevant part:

§ 350  False advertising unlawful

False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

These sections were enacted for the purpose of protecting consumers. *See, e.g., Genesco Entertainment, a Division of Lymutt v. Koch,* 593 F.Supp. 743, 751–52 (S.D.N.Y. 1984). Hertz is neither a consumer of Avis's

service nor a consumer protection agency. Hertz has failed to assert that it relied on the alleged representations and therefore it may not obtain relief based on the General Business Law claims. *See Bello v. Cablevision Systems Corp.*, 185 A.D.2d 262, 587 N.Y.S.2d 1, 2 (2d Dep't), *leave to appeal denied,* 80 N.Y.2d 761, 607 N.E.2d 817, 592 N.Y.S.2d 670 (1992). In addition, the Court notes that plaintiff failed to present evidence of actual deception. Moreover, plaintiff's conduct was fully disclosed. In such a case, no injunction will issue.

## CONCLUSION

Hertz has failed to meet its burden of proof on this application for a preliminary injunction that Avis's advertising campaign is either literally false or misleading in violation of the Lanham Act. As such, no injunction will issue. In addition, Hertz failed to meet its burden with respect to the New York General Business Law claims. The application for a preliminary injunction preventing defendant from continuing to advertise its Return Valet service is denied.

**SO ORDERED.**