**NOVO NORDISK A/S, Novo Nordisk of, North America, Inc. and Novo Nordisk Pharmaceuticals Inc., Plaintiffs,**

v.

**BECTON DICKINSON AND COMPANY, Defendant.**

**BECTON DICKINSON AND COMPANY, Cross–Claimant,**

v.

**NOVO NORDISK A/S, Novo Nordisk of, North America, Inc. and Novo Nordisk Pharmaceuticals Inc., Cross–Defendants.**

**No. 96 CIV. 9506(BSJ).**

United States District Court, S.D. New York.

March 12, 1998.

---

Edward V. Filardi, Carol A. Witschel, White & Case, New York, NY, for Cross–Defendants.

Robert A. Atkins, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, for Cross–Claimant.

## OPINION & ORDER

JONES, District Judge.

Cross-claimant Becton Dickinson and Company ("Becton") counterclaims against cross-defendants Novo Nordisk A/S, Novo Nordisk of North America, Inc. and Novo Nordisk Pharmaceuticals Inc. (collectively "Novo") alleging that certain promotional materials distributed by Novo constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and

Sections 349 and 350 of the New York General Business Law.[1]

On June 30 and July 1, 1997, the Court conducted a hearing on Becton's motion for a preliminary injunction. Having analyzed the evidence presented at that hearing under the relevant standards, the Court denies the injunction requested by Becton, but grants limited injunctive relief.

## BACKGROUND

Novo and Becton are pharmaceutical companies involved in the development, production and distribution of products related to the treatment of diabetes. At the heart of the current dispute is a pen delivery system manufactured by Novo, known as the NovoPen 1.5 ("NovoPen 1.5"), that offers diabetes patients a convenient means of self-administering insulin. The pen delivery system is a relatively new alternative to the traditional syringe and vial method of insulin injection that is used by over 90% of diabetes patients.

The NovoPen 1.5 consists of three components: the actual pen, a disposable needle, and an insulin cartridge. The needle and cartridge are replaceable, and Novo sells both of these components, marketing the needle under the name "NovoFine 30."

1. The Court's analysis under the New York General Business Law is the same as under the Lanham Act. *See Princeton Graphics Operating, L.P. v. NEC Home Elecs. (U.S.A.), Inc.*, 732 F.Supp. 1258, 1267 (S.D.N.Y.1990) ("the standards for a violation under Section 350-d [of the New York General Business Law] are substantially the same as under section 43(a) [of the Lanham Act]"). Accordingly, for purposes of this Opinion the Court's discussion will focus solely on the Lanham Act.

2. Novo began developing technology for a pen delivery system in the 1980s, and found great success marketing its pens abroad before introducing them in the United States. Before developing the NovoPen 1.5, Novo produced two precursor models of insulin pens, known as the NovoPen and the NovolinPen. Neither of these pens currently are sold in the United States. In addition, Novo sells a disposable insulin pen, known as the Novolin Prefilled.

3. The B–D Ultra–Fine II is at the center of a patent infringement action brought by Novo against Becton that is the subject of a companion Opinion & Order issued by the Court.

4. Specifically, Becton challenges the following statements:

The primary advantage of the NovoPen 1.5 is that it allows patients to dial the appropriate insulin dose without having to measure insulin before each injection. The NovoPen 1.5 is also more discreet than the traditional syringe. As a result, when given the choice between the traditional syringe and the insulin pen, many diabetes patients will opt for the pen.

After Novo introduced the NovoPen 1.5 in the United States [2] in June 1996, Becton developed its own pen system, known as the B–D Pen. Becton also began to market its disposable needles, known as the B–D Ultra–Fine and the B–D Ultra–Fine II [3] (collectively the "Ultra–Fine needles"), for use in the NovoPen 1.5, after receiving clearance from the Food and Drug Administration ("FDA").

In marketing the NovoPen 1.5, Novo makes certain statements that Becton claims amount to false advertising. First, Novo advertises that the "NovoFine 30 disposable needle is the finest and shortest insulin needle available in the U.S." Second, in product packaging, instruction manuals, and brochures, Novo makes several statements to the effect that the NovoPen 1.5 is to be used only with NovoFine disposable needles.[4]

On the right side of the NovoPen 1.5 package, in a yellow oblong oval, Novo states:
"Use with Novolin PenFill cartridges and NovoFine disposable needles only."
On the side of the same package, in blue print, Novo states:
"To be used with NovoFine 30 disposable needles and Novolin PenFill cartridges only."
Turning to the instruction manual for the NovoPen 1.5, on the introductory page, Novo states:
"To use the NovoPen 1.5 device, you will need:
● Novolin PenFill 1.5 ml insulin cartridges.
● NovoFine Needle.
● Alcohol swabs."
In the same manual, under the heading "important things to know," Novo states in bold print:
"The NovoPen 1.5 device should only be used with Novolin PenFill 1.5 ml insulin cartridges, NovoFine single-use disposable needles or other products specifically recommended by Novo Nordisk."
That statement is immediately followed by:
"Novo Nordisk is not responsible for any consequences arising from the use of the NovoPen 1.5 device with products that are not recommended by Novo Nordisk."
In addition, in promotional brochures distributed by Novo, Novo states:

Becton seeks a preliminary injunction to prevent Novo from making each of these statements.

## DISCUSSION

In order to obtain a preliminary injunction, Becton must show (1) irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in Becton's favor. *See Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir.1992); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979).

### I. *Irreparable Injury*

■ Here, Becton has met its burden with regard to irreparable injury if its false advertising claims are meritorious. Becton and Novo are the major competitors in the insulin pen and needle markets, engaged in head-to-head competition. While this fact alone does not establish irreparable harm where there has been no direct reference to Becton in Novo's advertisements, *see McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir.1988), Becton has submitted consumer survey evidence, as discussed below, that supplies "the causative link between the

advertising and [Becton's] potential lost sales." *See Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d Cir.1982). Moreover, because Becton's claims relate to the Ultra–Fine II, which is a relatively new entrant in the needle market, Becton would have a particularly difficult time proving money damages if it were to succeed ultimately in its claims.[5]

### II. *The Merits of Becton's Claims Under the Lanham Act*

■ Turning to the merits of Becton's claims, to succeed under § 43(a) of the Lanham Act,[6] Becton may proceed under either of two theories. First, Becton can attempt to show that the challenged advertisement is literally false, meaning that it is false on its face or "explicitly false." *See Coca–Cola*, 690 F.2d at 316–17; *see also Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992); *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir.1991). A claim based on this theory requires Becton to adduce evidence that affirmatively shows Novo's claim to be false. *See Glaxo Warner–Lambert OTC G.P. v. Johnson & Johnson Merck Consumer Pharms. Co.*, 935 F.Supp. 327, 329 (S.D.N.Y.1996) (citing *Castrol*, 977 F.2d at 62).[7]

"To be used only with NovoFine 30 Disposable Needle."

Finally, in a product insert, Novo states:

"IMPORTANT! Your NovoPen 1.5 Delivery System is for use with Novolin PenFill Insulin Cartridges and NovoFine 30 Needles only. If you are using or have received other products, please call immediately . . . for important information."

**5.** Novo argues extensively that Becton's delay in seeking a preliminary injunction undermines Becton's claim of irreparable injury. The Court disagrees with this argument insofar as it relates to the finding of irreparable injury in this case. Nevertheless, the Court agrees with Novo that Becton's delay is relevant to the Court's analysis. Accordingly, the Court discusses Becton's delay when balancing the hardships. *See supra* Section III.

**6.** Section 43(a) of the Lanham Act provides in relevant part:

(1) Any person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact,

or false or misleading representation of fact, which—

. . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (1988).

**7.** Citing Third Circuit law, Becton argues that the literal falsity theory applies, not only to claims made explicitly, but also to claims made "by necessary implication." *See* Becton's Memorandum of Law in Support of Its Motion for a Preliminary Injunction ("Becton Memorandum") at 23 (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir.1993)). Insofar as this is an attempt by Becton to broaden the standard for "literal falsity" the Court rejects this argument because claims of implicit falsity properly belong within the "likely to mislead and confuse" category of claims. *See Coca–Cola*, 690 F.2d at 317

Alternatively, Becton can succeed on its claim by showing that the challenged advertisement, while literally true, is likely to mislead or confuse consumers, given the merchandising context. *See Johnson & Johnson v. GAC Int'l Inc.,* 862 F.2d 975, 977 (2d Cir.1988). In addressing a claim brought under this theory, the Court asks "what does the person to whom the advertisement is addressed find to be the message?" *Glaxo,* 935 F.Supp. at 331 (quoting *American Home Prods. Corp. v. Johnson & Johnson,* 577 F.2d 160, 166 (2d Cir.1978)). Normally—and in this case—the Court is aided in this analysis by consumer study results submitted by the plaintiff.

With these standards in mind, the Court now turns to Becton's claims.

### A. The "Finest and Shortest" Advertisement

■ Becton's first claim is based on Novo's statement that the "NovoFine 30 disposable needle is the finest and shortest insulin needle available in the U.S." Becton claims that this statement is false because the B–D Ultra–Fine II is as fine and as short as the NovoFine 30.

The Court agrees with Becton that the NovoFine 30 and B–D Ultra–Fine II are equally fine and short. Both are thirty gauge[8] needles, with an outer diameter of .3 millimeters and a length of eight millimeters. This fact, however, does not demonstrate that Novo's statement is false.

First, Novo's statement is not literally false. Taken literally, the Court reads Novo's statement to mean that no needle on the market is finer or shorter. Becton has adduced no evidence to show that this claim is false. Indeed, it has not alleged that the B–D Ultra–Fine II—or any other needle on the market—is finer or shorter than the NovoFine 30. Where, as here, more than one competitor produces the finest and shortest needle available on the market, the proper recourse for Becton is to compete in the marketplace with its own advertisements.[9]

Second, Becton has submitted no evidence that the "finest and shortest" advertisement is likely to mislead or confuse consumers. In this regard, the Court notes that none of the consumer survey evidence submitted by Becton relates to this claim.

In short, Becton has not met its burden of showing either a likelihood of success or sufficiently serious questions going to the merits to warrant a preliminary injunction. Accordingly, Becton's motion with respect to Novo's "finest and shortest" advertisement is denied.

### B. The "To Be Used Only with" Advertisements

■■ Becton's second claim—relating to Novo's "to be used only with" advertisements—presents a much closer issue. Becton argues that these advertisements necessarily convey a message that Becton's needles are incompatible with the NovoPen 1.5. Becton contends that this message is false.

Novo counters that the "to be used only with" statement is neither true nor false, but rather a directive that Novo is entitled to

---

(drawing distinction between statements that are explicitly false and those that are implicitly false, and placing those that are implicitly false in category of likely to mislead or confuse); *see also American Home Prods. v. Johnson & Johnson,* 577 F.2d 160, 165 (2d Cir.1978) (same); *Weight Watchers Int'l, Inc. v. Stouffer Corp.,* 744 F.Supp. 1259, 1289 (S.D.N.Y.1990) ("If the advertisement . . . is implicitly rather than explicitly false, plaintiff can show false advertising under the Lanham Act only by presenting evidence that the public was misled, confused or deceived by the statement at issue.").

8. The gauge refers to the outer diameter of the needle. The higher the gauge, the narrower the diameter.

9. The Court has received evidence to indicate that Becton intended to advertise in this manner until it opted instead to litigate. For example, an article distributed by Becton for use by Becton's sales department began, "[r]ecently, manufacturers of insulin pen needles have introduced the thinnest and shortest needle ever." *See* June 25, 1997 Declaration of Carol A. Witschel, Ex. C. Moreover, the back of the B–D Ultra–Fine II box, reads "No pen needle is thinner!" *See* Plaintiff's Exhibit 6 from the Preliminary Injunction Hearing. The Court reads this language to convey the same message as that made by Novo.

make in promoting its own products. In this regard, Novo argues that the NovoPen 1.5 is part of a "dedicated" system that is designed for use only with components produced or approved by Novo. Novo further argues that even if its statement conveys a message of incompatibility, that message is true because Becton's needles cannot perform a "function check" feature that is unique to the NovoPen 1.5.

As an initial matter, the Court agrees with Novo that, insofar as Novo's statement is a directive, it cannot be deemed literally true or false. On its face, Novo's statement makes no factual claim. Moreover, none of the statements made by Novo explicitly mentions Becton, the Ultra–Fine needles, or compatibility. Rather, taken literally, Novo's statements merely instruct diabetes patients to buy NovoFine needles for the NovoPen 1.5. Such a recommendation, as long as it is non-deceptive, is proper and shows only that Novo is interested in promoting its product over others, the same as any other company.

The real issue before the Court is whether the "to be used only with" statement is deceptive, or implicitly false, such that it is likely to mislead and confuse consumers. Had Novo included the word "recommended" before its statements or deleted the word "only," the Court has little doubt that Novo's advertisements would be lawful. However, since Novo chose neither of these options, the Court is left to consider whether Novo's statements convey a misleading or confusing message.

In support of its claim, Becton has submitted consumer survey evidence to demonstrate that a not insubstantial percentage of consumers understand Novo's advertisements to convey a message that Becton's needles are incompatible with the NovoPen 1.5.

Becton's survey, conducted by Audits & Surveys Worldwide Inc. ("Audits & Surveys"), asked 202 diabetics who self-inject insulin and 100 pharmacists who dispense insulin delivery products in nine regions located throughout the country for their reactions to Novo's advertisements. In response to open-ended questions, forty-eight percent of the diabetics and fifty-six percent of the

pharmacists, said that the NovoPen 1.5 can only be used with Novo needles and/or insulin cartridges. When asked directly whether the NovoPen 1.5 can be used with other needle brands, ninety percent of the diabetics and ninety-six percent of the pharmacists responded that only Novo needles can be used. Only one diabetic and no pharmacists responded that other companies' needles can be used with the NovoPen 1.5. Based on these results, Solomon Dutka, Chief Executive Officer for Audits & Surveys, concluded that a large portion of Novo's target audience likely would read Novo's advertisements to mean that Becton's needles are incompatible with the NovoPen 1.5.

Novo finds fault in Becton's study and, in fact, raises some legitimate concerns about Becton's results. Notably, Becton's survey omitted physicians, who may play a significant role in determining how diabetes patients choose their needles. Moreover, the survey interviewers were not instructed to ask follow-up questions to clarify what some respondents meant when they said that the NovoPen 1.5 can only be used with Novo components. At least some of these respondents may not have equated the "can use only with" language with incompatibility, as Becton claims. Finally, the survey may have over-predicted participants' responses by asking questions that contained the same language that appeared in Novo's advertisements; some respondents merely may have parroted their responses based on what they had just read.

Nevertheless, even accounting for Novo's criticisms, the survey results support Becton's argument that a not insubstantial number of consumers read Novo's advertisements to indicate that Novo's competitor's needles, including the Ultra–Fine needles, are incompatible with the NovoPen 1.5. This conclusion is consistent with the Court's own reaction to the advertisements. It is also consistent with the testimony of Linda Siminerio, a diabetes educator, who testified at the preliminary injunction hearing that the "to be used only with" language is understood in the diabetes treatment industry to mean that other needles are incompatible. Based on this evidence, Becton has demonstrated a

likelihood that Novo's advertisements convey a message of incompatibility. *See McNeilab, Inc. v. American Home Prods. Corp.,* 848 F.2d 34, 37–38 (2d Cir.1988) (survey that showed "not insubstantial fraction" of respondents were misled found to be sufficient, despite its flaws); *Coca–Cola,* 690 F.2d at 317 (showing that "not insubstantial number of consumers were clearly misled" found to be sufficient); *R.J. Reynolds Tobacco Co. v. Loew's Theatres, Inc.,* 511 F.Supp. 867, 876 (S.D.N.Y.1980) (deception rate of between 23% and 33% found to be sufficient). Accordingly, the Court now turns to whether the message of incompatibility is false or misleading.

In support of its claim, Becton has submitted evidence of test results from fourteen studies that show dimensional, functional, and clinical compatibility between the Ultra–Fine needles and the NovoPen 1.5. This evidence by in large is unrefuted.

First, Becton's Ultra–Fine needles have the same standard thread size and geometry as the NovoFine needles, which allows them to "couple" or "mate" with the NovoPen 1.5. These results comply with dimensional compatibility specifications promulgated by the International Organization for Standardization (also known as "ISO"),[10] meaning that the Ultra–Fine needles meet industry standards for attaching to and detaching from the NovoPen 1.5.

Second, dosage accuracy tests conducted by Becton demonstrate that the NovoPen 1.5 discharges an accurate dose of insulin when used with Ultra–Fine needles. These test results complied with ISO standards for allowable weight ranges in insulin delivery.

Third, clinical studies with 106 diabetes patients in Canada disclosed no therapeutic difference between using Ultra–Fine and NovoFine needles in the NovoPen 1.5. Over the sixth-month period of the studies, researchers drew blood from participating patients at three-week intervals to test the patients' blood sugar levels. Results of these studies showed no statistically significant change in the patients' blood sugar levels or metabolic control when they switched between Ultra–Fine and NovoFine needles. There also were no significant reports of increased pain or discomfort.[11] The evidence from these studies demonstrates that the Ultra–Fine needles are as safe and efficacious as the NovoFine needles when used on the NovoPen 1.5.

Finally, following criticism from Novo that Becton had failed to conduct an ISO "torque" test, Becton completed such a test in compliance with ISO standards. The results from this test showed that the torque required to unscrew an Ultra–Fine needle from a Novo-Pen 1.5 is well within the ISO standards.[12]

Based on this evidence, Becton has made a strong showing of compatibility. Were this the only evidence on the record, the Court would have little difficulty in concluding that Becton has shown a likelihood of success on the merits of its claim.

Novo, however, has raised a compelling argument that the Ultra–Fine needles are not in fact compatible because a diabetes patient using an Ultra–Fine needle cannot perform the NovoPen 1.5 "function check."[13]

**10.** The International Organization for Standardization—known as "ISO" from the Greek word "isos," *or* equal—is a worldwide federation of national standards bodies that promulgates technical specifications and other criteria in various industries. ISO provides the only existing industry-wide standards for evaluating insulin pen and needle performance.

**11.** *In fact, some patients reported less pain with* the Ultra–Fine II than with either the Ultra–Fine original or the NovoFine 30.

**12.** In addition to these studies, Becton points to litigation in Europe that resulted in Novo being enjoined from making analogous statements. There, a German court and the Commission of the European Communities found that Novo's advertisements were misleading because Becton's needles were compatible with Novo's pens. While this Court is not bound by the European findings, it does believe that these findings support Becton's current claim of compatibility.

**13.** Novo further argues that the Ultra–Fine needles are incompatible because they do not fit properly inside the NovoPen 1.5 carrying case and because a user cannot replace the NovoPen 1.5 cap when the pen is attached to a shielded Ultra–Fine needle. While recognizing that Novo is free to highlight these points in advertising if it so chooses, the Court rejects these claims as a basis to deny Becton injunctive relief.

With the function check, a user can determine immediately whether the NovoPen 1.5 is working properly and delivering the right amount of insulin. This feature is useful if a diabetes patient has dropped the NovoPen 1.5 or otherwise suspects that the NovoPen 1.5 might be damaged or malfunctioning.

To perform the function check, a user must attach a capped NovoFine needle to the NovoPen 1.5, set the dial-a-dose insulin indicator on the pen to twenty units, press the pen's push button, and dispense insulin into the needle's outer cap. The lower portion of the outer cap holds exactly twenty units of insulin so that if the NovoPen 1.5 is functioning properly the lower portion will fill precisely to the top.

With an Ultra–Fine needle, however, a user cannot perform the function check because the Ultra–Fine needle's outer cap does not measure twenty units. Becton concedes this point and, indeed, advertises on its Ultra–Fine packages that the "[t]he Novo function check cannot be performed with this needle."

Whether or not this inability to perform the function check renders the Ultra–Fine needles incompatible turns on whether the function check is "an inherent quality or characteristic" of the NovoPen 1.5. *See Weight Watchers Int'l, Inc. v. Stouffer Corp.,* 744 F.Supp. 1259, 1282 (S.D.N.Y.1990).

In deciding this question for purposes of Becton's motion, the Court has considered the primary uses of the NovoPen 1.5, the nature of the diabetes market, the standards within the industry as defined by the ISO, and the definition of "compatibility" in other contexts. *See Weight Watchers,* 744 F.Supp. at 1278–80 (discussing compatibility in context of dieting plans); *Princeton Graphics Operating, L.P. v. NEC Home Elecs. (U.S.A.), Inc.,* 732 F.Supp. 1258, 1260–62 (S.D.N.Y.1990) (applying a rigid definition of compatibility in case of computer competition in part because of industry's emphasis on precision). An analysis of these factors cuts both ways, and therefore raises only serious questions as to Becton's claim.

Much of the evidence before the Court suggests that the function check is more of an extrinsic feature than an inherent one. That Becton received FDA approval to market its needles for use with the NovoPen 1.5 supports this position. Also supporting this position is the fact that the Ultra–Fine needles comply with standards promulgated by the ISO. Finally, certain statements made by Novo in the European litigation indicate that Novo itself has not always considered the function check to be an essential feature of the NovoPen 1.5.

At the same time, the Court recognizes that Novo has designed a "system" and that it should be entitled to promote components that enable every feature of that system to function. Needles that limit the capabilities of the system, even in a relatively minor respect, cannot be considered "fully" compatible in the strictest sense.

III. *Balancing the Hardships*

■ Having found that there are sufficiently serious questions going to the merits of Becton's claim and that there is a risk of irreparable harm, the Court now proceeds to balance the equities.

Although Becton has not presented evidence of the costs of its investment or of its market losses, the Court recognizes that Becton likely has invested time and effort in the development of the Ultra–Fine needles. A message of incompatibility, if misleading or false, constitutes irreparable harm to Becton's good will and reputation, in part, because it may raise concerns about safety and quality control. These concerns are especially harmful in the diabetes treatment market because health care consumers typically emphasize safety and efficacy. Moreover, with respect to the Ultra–Fine II, which is a relatively new entrant to the market, early losses in market share may be difficult to measure and recoup, since consumers in the diabetes treatment market may form early product loyalty and be adverse to switching to a competitor's product. Here, the Court notes that at the time of the preliminary injunction hearing Novo controlled as much as 95% of the United States market for pen injection systems.

At the same time, Becton's need for a preliminary injunction is mitigated by the

fact that Becton delayed in bringing this action. Becton apparently knew of Novo's advertising by June 1996 and launched its own insulin pen and Ultra–Fine II needles in September 1996. Yet Becton did not file this cross-action against Novo until March 1997. Some of this delay may be attributable to settlement discussions with Novo that would have rendered Becton's current claims moot. Nevertheless, the length of Becton's delay—over six months—"undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief." *See Citibank, N.A. v. Citytrust,* 756 F.2d 273, 277 (2d Cir. 1985).

In addition, the broad injunction sought by Becton—which includes a requirement that Novo affirmatively notify patients and health care professionals of the compatibility of Becton's needles—would be inequitable in light of advertisements published by Becton to promote its own B–D Pen. Those advertisements employ similar directives to consumers to use Becton needles in the B–D Pen.

Turning to Novo, the Court finds that Novo should have been on notice that these advertisements had the potential to be misleading, particularly since the same advertisements had been enjoined in Europe. Of course, Novo is entitled to promote the Novo-Pen in such a way as to maximize profits, but it may not convey a message of incompatibility if that message is false. A simple change in Novo's language will clarify that message without imposing too great of a hardship. This factor weighs heavily in Becton's favor.

■ Lastly, in considering the public's interest in this matter, the Court notes that consumers have an interest in receiving precise and accurate information. Diabetes patients who own the NovoPen 1.5 should be informed of their options in a truthful and non-misleading manner, and should be able to benefit from compatible components when such components are available. Again, this factor weighs in Becton's favor.

Balancing these factors, the Court concludes that limited injunctive relief is warranted.

## IV. Remedy

In determining Becton's remedy, the Court will fashion a narrow injunction to fit the specific legal violation alleged and to comport with the equities presented. *See Waldman Publ'g Corp. v. Landoll, Inc.,* 43 F.3d 775, 785 (2d Cir.1994) (citation omitted); *Sterling Drug, Inc. v. Bayer AG,* 14 F.3d 733, 747 (2d Cir.1994).

Accordingly, Novo is enjoined from future dissemination or publication in packaging, product labels, advertisements, product literature or instruction manuals of the following statements:

- Use with NovoFine disposable needles only [14];
- To be used with NovoFine disposable needles only;
- The NovoPen 1.5 should only be used with NovoFine single-use disposable needles or other products specifically recommended by Novo Nordisk;
- To be used only with NovoFine 30 disposable needles;
- The NovoPen 1.5 Delivery System is for use with NovoFine 30 Needles only.[15]

To be clear, this injunction does not prevent Novo from recommending its own needles for use in the NovoPen 1.5, as long as such recommendation does not conflict with the

---

14. Becton's proposed injunction also would bar Novo from making similar statements about the Novolin PenFill insulin cartridges. The Court rejects this proposal because it has heard no evidence regarding the insulin cartridges. Moreover, Becton lacks standing to challenge this language because it does not produce or market insulin cartridges.

15. On August 5, 1997, Becton brought to the Court's attention a product insert included by Novo in recent NovoPen 1.5 boxes. The injunction in this case would include statements made in these product inserts, including Novo's statement that the "should only be used with" label is "FDA cleared."

Regarding the "FDA cleared" language, the Court further notes that such language likely violates federal regulations that provide:

Any representation that creates an impression of official approval of a device because of complying with the premarket notification regulations is misleading and constitutes misbranding.

21 C.F.R. § 807.97 (1996).

Court's order. Moreover, the Court rejects Becton's proposal that Novo be required to distribute written notice to various individuals in the diabetes treatment market that the Ultra–Fine needles are compatible with the NovoPen 1.5. Such a requirement would impose an undue burden on Novo to test and analyze Becton's products.

Finally, the Court finds that it has insufficient information to determine the timing and parameters of the injunction, particularly with regard to packaging and other materials already printed or distributed to wholesalers. Accordingly, the parties are directed to appear before the Court on Friday, March 13, 1998, at 10:00 a.m. At that time, Novo shall be prepared to supply the Court with information concerning, but not limited to, the current method of distribution of the NovoPen 1.5, the approximate volume and locations of the product in the distribution stream, the projected time-frame for FDA approval of any new labeling, and the costs of complying with this order. The parties are further directed to provide the Court with relevant information concerning the calculation of a security bond, as required by Fed. R.Civ.P. 65(c).

**SO ORDERED:**